IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALESHA WARREN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESULTS CUSTOMER SOLUTIONS LLC, d/b/a RESULTS CX,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 24-888-JLH-SRF<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION[1]

Alesha Warren ("Plaintiff") filed this class action complaint alleging Defendant, Results Customer Solutions, LLC ("Defendant" or "RCS") violated the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.*, ("WARN Act") when it terminated Plaintiff and other similarly situated employees without sixty days advance written notice. (D.I. 1) Pending before the court is Defendant's motion to transfer this case to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). (D.I. 16)[2] For the reasons set forth below, the court **DENIES** Defendant's motion to transfer.

### I. BACKGROUND

Plaintiff initiated this civil action for violations of the WARN Act on July 29, 2024. (D.I. 1) Plaintiff was formerly employed by RCS as a customer service representative from October of 2020 until her termination on May 18, 2024. (*Id.* at ¶ 6) Plaintiff is a resident of Ohio and

---

[1] A motion to transfer is a non-dispositive motion for purposes of 28 U.S.C. § 636(b)(1). and, therefore, will be addressed in a Memorandum Opinion. *See Agincourt Gaming LLC v. Zynga Inc.*, 2013 WL 3936508 (D. Del. July 29, 2013)

[2] The briefing submitted for the motion can be found at D.I. 17, D.I. 25, and D.I. 26.

worked remotely from there while reporting to RCS's office located in Lakeland, Florida. (*Id.* at ¶ 8) Plaintiff worked within a unit which only serviced one RCS client, Humana Medicare ("Humana"). (*Id.* at ¶ 9)

RCS is a Delaware limited liability company with its principal place of business located in Fort Lauderdale, Florida. (*Id.* at ¶ 15) Plaintiff took direction and reported to supervisors at RCS who were located in Lakeland, Florida, which is in the Middle District of Florida. (*Id.* at ¶ 8) RCS states that while its principal place of business is in Fort Lauderdale, it is geographically closer to the Middle District of Florida than the Southern District of Florida.

RCS engaged in the business of operating call centers staffed by customer service agents, like the Plaintiff, who provided customer support services to RCS's clients, such as Humana. (*Id.* at ¶ 14) In this case, Plaintiff and the proposed impacted class worked exclusively on the Humana account. (*Id.* at ¶¶ 14–19)

On May 18, 2024, Plaintiff was notified of her termination, effective immediately, due to the closure of Humana's account with RCS. (*Id.* at ¶ 10) Plaintiff states that she did not receive any prior written notice that her employment would be terminated until May 17, 2024. (*Id.* at ¶ 11) Plaintiff alleges that she and an estimated 300 other similarly situated employees of RCS, who also worked remotely on the Humana account, were terminated at the same time without 60 days advance written notice as required by law. (*Id.* at ¶¶ 13, 25)

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case

2

consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In evaluating a motion to transfer, the court must first determine "whether the case could have been brought in the district to which the movant wishes to transfer." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara v. State Farm Ins.*, 55 F.3d 873, 878 (3d Cir. 1995). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA–Tencor Corp.*, 138 F.Supp.2d 565, 567–68 (D. Del. 2001); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). The deference afforded a plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *Medtronic, Inc. v. Boston Scientific Corp.*, 587 F. Supp. 2d 648, 654 (D. Del. 2008).

Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiffs choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *Rudolph v. HR Specialist, Inc.*, 37 F. Supp. 3d 740, 745 (D. Del. 2014) (quoting *In re ML–Lee Acquisition Fund II, LP.*, 816 F. Supp. 973, 976 (D. Del. 1993)).

Plaintiff does not dispute that this action could have been brought in the Middle District of Florida. Thus, the only issue for decision is whether the court should exercise its discretion under Section 1404(a) and transfer the case to that district.

In determining whether an action should be transferred under § 1404(a), the Third Circuit identified in *Jumara* twelve non-exclusive public and private interest factors. 55 F.3d at 879–80.

3

The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). The public interests include: "(7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

## III. DISCUSSION

### A. The Private Interest Factors

#### 1. Plaintiff's Forum Preference – Strongly Weighs Against Transfer

The parties agree that this factor weighs against transfer. However, they disagree about how heavily this factor weighs in the *Jumara* balancing test. Defendant argues that the court should discount the weight assigned to Plaintiff's forum choice because she lacks a physical connection to Delaware. (D.I. 17 at 5) However, Plaintiff's choice to sue in the District of Delaware is a "paramount consideration" in the section 1404(a) analysis. *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020) (quoting *Shutte*, 431 F.2d at 25). Chief Judge Connolly and other judges in this district, follow the reasoning of Judge Stapleton in *Burroughs Wellcome*, and I will follow the same. 392 F. Supp. 761 (D. Del. 1975)). Judge Stapleton found that the Third Circuit's "statement of 'black letter law'" in *Shutte* is "an across-the-board rule favoring plaintiff's choice of forum." *Paycom Software, Inc. v.*

4

*Travelers Casualty & Sur. Co. of Am.*, No. CV 21-01403-CFC, 2022 WL 1063845, at *3 (D. Del. Apr. 8, 2022) (quoting *Shutte*, 431 F.2d at 25); *accord Rockwell Automation, Inc. v. EU Automation, Inc.*, C.A. No. 21-1162-MN, 2022 WL 15447159, at *3 (D. Del. Oct. 27, 2022). Thus, this factor strongly weighs against transfer.

### 2. Defendant's Forum Preference – Slightly Favors Transfer

This factor weighs slightly in favor of transfer. Defendant selected Delaware as its place of incorporation although none of its operations are in this district. (*See* D.I. 1; D.I. 17) Defendant's preference to transfer this case to the Middle District of Florida has a reasonable basis because it conducted its business operations relevant to this case in and near that district. Moreover, Plaintiff agrees that this factor slightly favors transfer.

### 3. Whether the Claims Arose Elsewhere – Slightly Favors Transfer

Defendant argues that all of the employment related decisions or business operations in issue occurred in Lakeland, or Fort Lauderdale, Florida. Plaintiff does not dispute that representation. (D.I. 17 at 2) This factor, therefore, weighs slightly in favor of transfer. (D.I. 25 at 7)

### 4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition – Neutral

For this factor, the courts consider: (1) the parties' physical location; (2) "the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes"; and (3) "the relative ability of each party to bear these costs in light of its size and financial wherewithal." *ANI Pharms., Inc. v. Method Pharms., LLC*, No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017)).

Defendant argues that neither Plaintiff nor Defendant's agents and likely witnesses live or work in Delaware. (D.I. 17 at 2 n.2.) In addition, Defendant argues that the costs associated with Plaintiff's travel from Ohio to Delaware is not likely to be substantially less than the costs of travel from Ohio to Florida. (*Id.* at 2) Plaintiff does not argue it would be cost prohibitive for her to travel to Florida and, instead, maintains that it is less convenient than traveling from Ohio to Delaware. (D.I. 25 at 8–9) Overall, the court finds this factor neutral.

### 5. The Convenience of Witnesses – Neutral

Under Third Circuit law, the district court considers the convenience of the witnesses only to the extent that any of the prospective witnesses would be unavailable for trial in one of the fora. *Jumara*, 55 F.3d at 879. The Defendant argues that "third-party witnesses" would more likely fall within the subpoena power of the Middle District of Florida, and not Delaware. (D.I. 17 at 8) However, the Defendant has not identified any specific witnesses who may be unavailable to testify at a trial held in Delaware. (D.I. 17 at 8–9) This factor is therefore neutral. *See Fink on behalf of Nation Safe Drivers Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 375 (D. Del. 2020) ("This factor carries weight 'only to the extent that the witnesses may actually be unavailable for trial in one of the fora.' *Jumara*, 55 F.3d at 879. Neither party has argued that a necessary witness will refuse to appear or otherwise be unavailable for trial in either venue").

### 6. The Location of Books and Records – Neutral

*Jumara* instructs the court to give weight to the location of books and records, only to the extent they could not readily be produced in the alternative forum. 55 F.3d at 879. The Defendant does not argue that the records could not be produced in Delaware, but instead that it would potentially increase costs. (D.I. 17 at 9) The Plaintiff argues there has been no showing

6

by the Defendant that the records could not be readily produced. (D.I. 25 at 11) Thus, the court finds this factor is neutral. *See Deloitte*, 692 F. Supp. 3d at 437.

### B. The Public Interest Factors

#### 7. Enforceability of the Judgment – Neutral

Both parties acknowledge that any judgment would be enforceable in either district. (D.I. 17 at 9; D.I. 25 at 12) Therefore, this factor is neutral.

#### 8. Practical Considerations – Slightly Favors Transfer

The court must consider whether there are any practical considerations that could make the trial easy, expeditious, or inexpensive in one district as compared to the other. *Jumara*, 55 F.3d at 879–80. The Defendant argues that its lead defense counsel, former and current employees, are all located in the Middle District of Florida so transfer would facilitate judicial economy and efficiency. (D.I. 17 at 10) In response, the Plaintiff argues that Delaware is more convenient as both she and her New York counsel could travel to Delaware and back on the same day but travel to Florida requires an overnight stay. (D.I. 25 at 12–13) Otherwise, Plaintiff does not reasonably dispute that this factor weighs slightly in favor of transfer and the court agrees.

#### 9. Relative Administrative Difficulty Due to Court Congestion – Neutral

Each side has cherry-picked select district court caseload statistics which best support their respective arguments for and against transfer. Defendant argues that in the Middle District of Florida, the median length of time between filing and trial for civil cases is 27.3 months and the median length of time between filing and disposition in civil cases is 5.3 months. (D.I. 17 at 10–11) Whereas in Delaware the corresponding civil case statistics are 32.9 months between filing and trial and 8.4 months between filing and disposition. (*Id.*)

7

The Plaintiff responds that the weighted caseload statistics disfavor transfer because the Middle District of Florida is the more congested district with 736 filings per judgeship and 697 weighted filings per judgeship, compared to the District of Delaware with 419 filings per judgeship and 657 weighted filings per judgeship. (D.I. 25 at 13) "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions." *Explanation of Selected Terms,* (Sept. 2024) ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/sites/default/files/2024-12/explanation-of-selected-terms-september-2024.pdf. Cases that require substantially more judicial resources than the average civil case receive a higher weight. *Id.*

The court takes judicial notice of the most recent Judicial Caseload Profiles as of September 2024. *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics* (Sept. 30, 2024), ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/data-news/reports/statistical-reports/federal-court-management-statistics/federal-court-management-statistics-september-2024. In the District of Delaware, the median length of time between filing and trial for civil cases is 32.2 months, compared to 28.4 months in the Middle District of Florida. *Id.* In the District of Delaware, the median length of time between filing and disposition for civil cases is 8.5 months, compared to 5.6 months in the Middle District of Florida. *Id.* Thus, civil cases track slightly faster in the Middle District of Florida.

In the District of Delaware, there are four active district judges and one senior judge with a full caseload. The weighted caseload is 628 per judge which is slightly less than the weighted caseload of 693 per judge in the Middle District of Florida, which has twelve active district court judges. *Id.*

8

The court further takes judicial notice of the "JUDGES Act of 2024," which proposed the creation of new judgeships for the District of Delaware and the Middle District of Florida, among other districts. JUDGES Act of 2024, S. 4199, 118th Cong. § 2 (2024). Had the legislation been enacted, Delaware would have received two new judgeships over the span of five years. *Id.* The Middle District of Florida would have immediately received two new judgeships in the first year and three more staggered over the remaining years. *Id.* The immediate need for new judgeships in both districts speaks to the level of court congestion in both.

On balance, there is no variable that tips the scale enough in one direction for the court to find that this factor is anything other than neutral.

### 10. Local Interest in Deciding Local Controversies at Home – Neutral

The Defendant argues that Florida has a stronger interest in this case than Delaware because the WARN Act claim arose in Lakeland, Florida. (D.I. 17 at 11) In opposition, Plaintiff argues that Delaware has a stronger interest in this case given that the case involves WARN Act violations made by a Delaware corporation and that the Plaintiff, as well as other members of the putative class action, were remote workers. (D.I. 25 at 7) Other courts in this district have found that Delaware "has an interest in litigation regarding companies incorporated within its jurisdiction." *See Kuck v. Veritas Software Corp.*, No. CIV. 04-831, 2005 WL 123744, at *3 (D. Del. Jan. 14, 2005). The court finds that Delaware has an interest in the case that is at least equal to Florida's. Accordingly, this factor is neutral.

### 11. The Public Policies of the Fora – Neutral

Defendant takes the position that this factor warrants transfer for reasons that overlap with local interest factor but is irrelevant otherwise. (D.I. 17 at 12) The Plaintiff argues that this

factor is largely inapplicable in a WARN Act case. (D.I. 25 at 15) Accordingly, the court finds this factor is neutral.

### 12. Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases – Neutral

Because the cause of action in this case is a federal WARN Act claim, and does not include claims based on state law, this factor carries no weight. (D.I. 17 at 12; D.I. 25 at 16)

### 13. Balancing the Private and Public Factors

In sum, of the twelve *Jumara* factors, three weigh slightly in favor of transfer, one weighs against transfer (and is to be given paramount importance), and the remaining eight are all neutral. In its discretion, the court finds that, considered in their totality, the *Jumara* factors weigh against transfer, and therefore the Defendant's motion to transfer is denied.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is hereby **DENIED**.

This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to five (5) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

The court will enter an Order consistent with this Memorandum Opinion.

Sherry R. Fallon
United States Magistrate Judge