IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALESHA WARREN, on behalf of herself )
and all other similarly situated, )
)
         Plaintiff, )
)
    v. )     C.A. No. 24-888-JLH-SRF
)
RESULTS CUSTOMER SOLUTIONS )
LLC, d/b/a RESULTS CX, )
)
         Defendant. )

**REPORT AND RECOMMENDATION**

Alesha Warren ("Plaintiff") filed this putative class action complaint alleging Defendant,

Results Customer Solutions, LLC ("Defendant" or "RCS") violated the Federal Worker

Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.*, ("WARN Act") when

Defendant terminated Plaintiff and other similarly situated employees without sixty days advance

written notice. (D.I. 1) Pending before the court is Defendant's Motion to Compel Arbitration

and stay the proceedings[1] (D.I. 56) and Plaintiff's Motion to Certify a Class.[2] (DI. 48) For

the reasons that follow, the court recommends **DENYING** the Motion to Compel Arbitration

without prejudice to renew following limited discovery on the issue of the formation and validity

of the arbitration agreement in issue, and **DENYING** the Motion to Certify a Class without

prejudice to renew subject to the court's disposition of any renewed Motion to Compel

Arbitration.

---

[1] The briefings and filings associated with the Motion to Compel Arbitration can be found at D.I. 56, D.I. 57, D.I. 58, D.I. 62, D.I. 63, D.I. 64, D.I. 66, D.I. 68, D.I. 69, D.I. 70, D.I. 73, D.I. 74
[2] The briefings and filings associated with the Motion to Certify a Class can be found at D.I. 48, D.I. 49, D.I. 50, D.I. 51, D.I. 60, D.I. 61, D.I. 65.

1

## I. BACKGROUND

### A. Facts

Plaintiff initiated this civil action for violations of the WARN Act on July 29, 2024. (D.I. 1) Plaintiff was formerly employed by RCS as a customer service representative from October of 2020 until her termination on May 18, 2024. (*Id.* at ¶ 6) Plaintiff is a resident of Ohio and worked remotely from there while reporting to RCS's office located in Lakeland, Florida. (*Id.* at ¶ 8) Plaintiff worked within a unit which only serviced one RCS client, Humana Medicare ("Humana"). (*Id.* at ¶ 9)

RCS is a Delaware limited liability company with its principal place of business located in Fort Lauderdale, Florida. (*Id.* at ¶ 15) Plaintiff took direction and reported to supervisors at RCS who were located in Lakeland, Florida, which is in the Middle District of Florida. (*Id.* at ¶ 8)

RCS engaged in the business of operating call centers staffed by customer service agents, like the Plaintiff, who provided customer support services to RCS's clients, such as Humana. (*Id.* at ¶ 14) In this case, Plaintiff and the proposed impacted class worked exclusively on the Humana account. (*Id.* at ¶¶ 14–19)

Plaintiff was employed for RCS from October 2020, until May 18, 2024. (*Id.* at ¶ 6) Upon Plaintiff beginning her job with RCS she completed a series of "Onboarding documents." (D.I. 57 at 3, D.I. 62 at 3) The dispute at issue concerns a Mandatory Arbitration Agreement ("Agreement") purportedly included with the Onboarding Documents. *Id.*

On May 18, 2024, Plaintiff was notified of her termination, effective immediately, due to the closure of Humana's account with RCS. (*Id.* at ¶ 10) Plaintiff states that she did not receive any prior written notice that her employment would be terminated until May 17, 2024. (*Id.* at ¶

2

11) Plaintiff alleges that she and an estimated 300 other similarly situated employees of RCS, who also worked remotely on the Humana account, were terminated at the same time without sixty days advance written notice as required by law. (*Id.* at ¶¶ 13, 25)

### B. Procedure

On September 16, 2024, Defendant answered the Complaint (D.I. 9), asserting among other affirmative defenses that Plaintiff's claims are subject to arbitration pursuant to the Agreement. (D.I. 9 at 8, ¶10) Defendant moved to transfer the case to the Middle District of Florida on October 21, 2024. (D.I. 16) On January 14, 2025, the undersigned Magistrate Judge denied the Motion to Transfer. (D.I. 30) There were no objections to the ruling.

On April 30, 2025, Plaintiff filed a motion for class certification, which has been fully briefed. (D.I. 48) On July 15, 2025, Defendant filed the instant Motion to Compel Arbitration (D.I. 56), followed by its opposition to class certification on August 4, 2025. (D.I. 60)

On September 22, 2025, Defendant moved for leave to supplement its reply brief in support of the Motion to Compel Arbitration (D.I. 68), which the court granted on September 23, 2025. (D.I. 72) Plaintiff's sur-reply brief was filed on September 26, 2025. (D.I. 73)

## II. Legal Standard

To succeed on a motion to compel arbitration, a party must show that (1) a valid agreement to arbitrate exists and (2) the dispute at issue falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Courts apply a presumption in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007) (noting the Federal Arbitration Act embodies a strong federal policy favoring arbitration); *Trippe*, 401 F.3d at 532. More recently, the Supreme Court has cautioned that the

3

"FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Supreme Court emphasized that the federal policy is about treating arbitration contracts like all others, not about fostering arbitration. *Id.*

Arbitration agreements may assign to the arbitrator the determination of whether a dispute is arbitrable at all. As the Supreme Court explained in *Henry Schein, Inc. v. Archer & White Sales, Inc.*:

> Under the [Federal Arbitration] Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms.... [P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.

586 U.S. 63, 67 (2019) (cleaned up). If there is "clear and unmistakable" evidence that the parties intended to delegate arbitrability, then "a court may not decide the arbitrability issue" and must instead let the arbitrator decide. (*Id.* at 69) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 140 (3d Cir. 2022) ("[Q]uestions about the 'making of the agreement to arbitrate' are for courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not in issue.") (quoting *MZM Constr. Co., Inc. v. N.J. Bldg. Labs. Statewide Benefit Funds*, 974 F.3d 386, 392 (3d Cir. 2020)). "[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). In determining who is bound by an arbitration agreement, "background principles of state contract law" apply. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

4

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a [Fed. R. Civ. P. 12(b)(6)] standard without discovery's delay.' But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.' After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

## III. DISCUSSION

Defendant moves to compel arbitration based upon the Agreement which Defendant claims Plaintiff accepted and signed as a condition of her employment. (D.I. 57 at 2-3)

Defendant relies on the delegation provisions of the Agreement as follows:

> **Agreement to Arbitrate Designated Claims**: except as otherwise provided in this Agreement or prohibited by law, the Company and the Employee hereby consent to the resolution by binding arbitration of all claims or controversies … other than claims excluded under Section 6 of this Agreement. This Agreement also covers all claims regarding the arbitrability of claims and the enforceability and/or validity of this Agreement.
> …
> **Exclusive Remedy**: For claims covered by this Agreement, arbitration is the parties' exclusive legal remedy. The arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement. The decision of the arbitrator on any claim submitted to arbitration as provided by this Agreement. The decision of the arbitrator on any claim

5

submitted to arbitration as provided by this Agreement shall be final and binding upon the parties, except as the validity of such award may be challenged after issuance in a court of competent jurisdiction.

(D.I. 58, Ex. 1, ¶¶5, 20)

In response, Plaintiff maintains that Defendant waived any right to compel arbitration by litigating this matter for nearly a year and Defendant cannot compel arbitration as there was no mutual assent to the Agreement. (D.I. 62 at 2) Plaintiff alternatively argues that, if the motion is not denied, the court should permit limited discovery on whether the parties mutually assented to the Agreement. *Id.*

### A. Waiver

Plaintiff's preliminary argument is that Defendant waived its right to compel arbitration by participating in discovery and failing to file the instant motion until after Plaintiff moved for class certification. (D.I. 62 at 6) In support of her argument, Plaintiff relies largely on the Third Circuit's ruling in *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023), where the court found that Defendants waived their right to compel arbitration.

In *White*, Defendants were on notice from the outset of the case that Plaintiff's claim could be arbitrable yet they continuously sought and agreed to participate in discovery, twice moved to dismiss the case on its merits, and otherwise litigated the case before asserting their right to arbitrate the claims. (*Id.* at 340-341).

In response, Defendant in the instant case argues that the court must address the gateway issue of whether waiver of the right to arbitrate remains presumptively an issue for the court to decide or whether it is a question of arbitrability that must be referred to the arbitrator. (D.I. 66 at 1-2) Defendant contends it is an issue of arbitrability for the arbitrator to decide because of the language in Section 5 of the Agreement which states:

6

> This Agreement also covers all claims regarding the arbitrability of claims and the enforceability and/or validity of this Agreement.

(D.I. 58, Ex. 1, ¶5; *see also* D.I. 66 at 1)

Plaintiff skirts this gateway issue, giving it only brief mention in a footnote. (D.I. 62 at 6 n.2) Namely, Plaintiff contends that waiver is an issue for the court to decide and cites in support, *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222, 48 V.I. 1034 (3d Cir. 2007). The court need not consider arguments made in a footnote. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (noting "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.") But even if the court were to consider it, Plaintiff fails to include the entirety of the quote from *Ehleiter*. The omitted portion held that the presumption that waiver is an issue for the court to decide may be overcome when the arbitration agreement clearly states otherwise:

> An issue that is presumptively for the court to decide will be referred to the arbitrator for determination only where the parties' arbitration agreement contains "clear and unmistakable evidence" of such an intent.

*Ehleiter*, 482 F.3d at 221.

At this stage, the court need not determine whether Plaintiff's assertion of waiver should be decided by the court or the arbitrator because the court recommends limited discovery relating to the Motion to Compel Arbitration (D.I. 56) for the reasons stated in the next section, *infra*.

## B. Discovery Is Warranted

Defendant fails to address the legal standard applicable to its Motion to Compel Arbitration. Under Third Circuit precedent, "when it is apparent, based on the face of a complaint and documents relied upon in the complaint," that the claims are subject to an enforceable arbitration clause, then the motion should be considered under the Fed. R. Civ. P.

7

12(b)(6) standard. *Guidotti*, 716 F.3d at 776 (internal quotation marks omitted). But if the complaint and its supporting documents are unclear, or if the plaintiff opposed the motion based on additional facts sufficient to place the agreement to arbitrate in dispute, then limited discovery is warranted and the court must consider any renewed motion under the Fed. R. Civ. P. 56 summary judgment standard. *Id.*

Plaintiff argues that additional discovery is needed under Fed. R. Civ. P. 56(d), as the complaint neither references nor attaches the Agreement, and a genuine dispute of material fact exists as to whether there was mutual assent to the Agreement. (D.I. 62 at 4-5)

The Third Circuit has held when addressing whether discovery is warranted in arbitration disputes, "A non-movant is generally entitled to discovery if he or she surmounts [Fed. R. Civ. P. 56(d)'s] modest procedural threshold." *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 (3d Cir. 2025); *see also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," among other things, "allow time...to take discovery").

In its reply brief, Defendant fails to address Plaintiff's alternative request for discovery under Fed. R. Civ. P. 56(d). Instead, Defendant relies entirely upon its argument that the Agreement is a valid and enforceable contract.[3] (D.I. 57 at 7)

Plaintiff disputes the authenticity of the Agreement and the validity of her purported signature, allegedly binding her to its terms. (D.I. 62 at 13-17) Plaintiff argues that neither she nor Defendant signed the Arbitration Agreement as required by the contractual language:

---

[3] Defendants contend that the Agreement is valid under Ohio law, which holds that the requirements for a valid contract include "an offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration." *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 669–70 (S.D. Ohio 2014) citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3, 770 N.E.2d 58, 61 (2002). (D.I. 57 at 8)

**"BY SIGNING BELOW**, EACH PARTY TO THIS AGREEMENT AKCNOWLEDGES ... THAT THEY HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THE AGREEMENT ITSELF."

(D.I. 64, Ex 1 at 6)  The Agreement provided to the court as an exhibit to Defendant's opening brief is unexecuted, that is, the signature lines for Plaintiff and Defendant's representative are blank. (D.I. 58, Ex 1 at 6)

Plaintiff further asserts that the timing does not align, contending the Agreement was purportedly signed at the outset of her orientation, even though that portion of the orientation was focused on technical instruction and introductions, not the execution of documents. (D.I. 74 at ¶3) In addition, she contends the Agreement lacks the indicia of authentication present in onboarding documents generated through a "narrative audit trail system" (D.I. 64 at 16)

Defendant does not meaningfully rebut these arguments and instead maintains that Plaintiff's inability to recall signing the Agreement, or the circumstances of its execution, does not create a genuine dispute of material fact.  (D.I. 66 at 8)

The court agrees with Plaintiff that the issue of mutual assent extends beyond Plaintiff's memory, as the record reflects a genuine dispute of fact regarding whether, when, and how the Agreement was executed, warranting limited discovery under Fed. R. Civ. P. 56(d).

Moreover, Defendant's reply brief and supplemental declarations of Crystal LaPorte (D.I. 69) and Vengal Shivvannagari (D.I. 70) do not provide greater clarity. Instead, these

9

declarations expand the record in a manner that further underscores the need for additional discovery regarding the execution of the Agreement and whether there was mutual assent.[4]

Based on the foregoing, the court recommends granting the parties leave to take additional discovery and further recommends that such discovery and any renewed Motion to Compel Arbitration comply with the amended scheduling order. (D.I. 78)  The court recommends that discovery proceed on the formation and validity of the Agreement, including the topics identified in the Plaintiff's Counsel's declaration as follows:

> a) Understanding of the system purportedly used to e-sign the Acknowledgement, given the apparent discrepancies between that method and the system used for the EOC Documents (as seemingly described by the Chaput Declaration)
> b) What agreement, if any, was presented to Plaintiff at the time she was purportedly asked to sign the Acknowledgement document.
> c) Any circumstantial evidence that would support Defendant's assertion that employees were signing documents in the middle of their October 9 orientation.
> d) Any circumstantial evidence that would support the assertion that the Agreement and Acknowledgement were a regular part of Defendant's onboarding process, including whether they were stored along with Plaintiff's other onboarding documents

(D.I. 64 at 3-4)

Because of the recommendation for additional limited discovery, the court recommends **DENYING** the Motion to Certify a Class (D.I. 48)  without prejudice to renew, pending resolution of a renewed motion to compel arbitration.

---

[4] Vengal Shivvannagari's declaration includes screenshots illustrating the process by which an employee executes the Agreement and asserts that Plaintiff manually typed "Alesha.Warren" without formatting instruction, followed by a quiz appearing after the signature. (D.I. 70 at ¶¶ 13–15). However, the original declaration of Laurie Chaput claims that the system affixes the employee name to the Agreement, with no mention of a follow-up quiz.  (D.I. 58 at ¶18)

## IV. CONCLUSION

For the foregoing reasons:

(1) The court recommends that Defendant's Motion to Compel Arbitration (D.I. 56) be **DENIED** without prejudice to renew pending limited discovery. The deadlines for completion of limited discovery and renewing the Motion to Compel Arbitration shall comply with the amended scheduling order. (D.I. 78)

(2) The court further recommends that Plaintiff's Motion to Certify a Class (D.I. 48) be **DENIED** without prejudice to renew pending resolution of a renewed motion to compel arbitration.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 26, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

11